# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL COLLINS,<br><br>                Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>                Defendant. | Case No. 2:17-cv-06795-SHK<br><br>OPINION AND ORDER |

Plaintiff April Collins ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying her application for supplemental security income ("SSI"), under Title XVI of the Social Security Act (the "Act"). This Court has jurisdiction, under 42 U.S.C. § 1383(c)(3), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

/ / /

# I. BACKGROUND

Plaintiff protectively filed an application for SSI on December 23, 2013, alleging disability beginning on November 1, 2010. Transcript ("Tr.") 579-88.[1] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on February 2, 2016, ALJ David J. Agatstein determined that Plaintiff was not disabled. Tr. 449-57. Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on July 18, 2017. Tr. 1-9. This appeal followed.

# II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196)); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." (citation omitted)). A reviewing

---

[1] A certified copy of the Administrative Record was filed on February 13, 2018. Electronic Case Filing Number ("ECF No.") 16. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

### III. DISCUSSION

#### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 416.920. The claimant carries the burden of proof at steps one

through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [SSI]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).[2]

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [SSI]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [SSI]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [SSI]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and

---

[2] The Court has also considered the parallel regulations set forth in 20 C.F.R. § 416.920 et seq., when analyzing the ALJ's denial of Plaintiff's SSI application.

4

the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [SSI]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 [("the Listings")]. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [SSI]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [SSI]. See id.

Id. at 1098-99.

### B. Summary Of ALJ And Agency's Findings

The ALJ made the following findings, with respect to steps one through four:

| Step | Findings |
|---|---|
| One | "[Plaintiff] has not engaged in [SGA] since December 23, 2013, the alleged onset date (20 C.F.R. 416.971 et seq.)." Tr. 451. |
| Two | "[Plaintiff] has the following severe impairments: vomiting with gastroparesis, back pain, anemia secondary to gynecological problems and a goiter (20 CFR 416.920(c))." Id. |

| | |
|---|---|
| Three | "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in [the Listings]." Tr. 452. |
| Preparation for Four | Plaintiff has the residual functional capacity ("RFC") to "perform the full range of light work as defined in 20 CFR 416.967(b). [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand, and walk for 6 hours out of an 8 hour day with normal breaks." Id. |
| Four | "In comparing [Plaintiff's] [RFC] with the physical and mental demands of her work as a sales clerk and manager, . . . [Plaintiff] is able to perform them as they were actually and generally performed." Tr. 456. The ALJ, therefore, concluded that Plaintiff "has not been under a disability, as defined in the . . . Act, since December 23, 2013, the date the application was filed (20 CFR 416.920(f))." Id. |

**C. Issue Presented**

In this appeal, Plaintiff raises only one issue, "whether the ALJ properly assessed [her] subjective pain and symptoms." ECF No. 18, Joint Stipulation at 4.

**1. ALJ's Analysis of Plaintiff's Symptom Statements**

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 453.

The ALJ then began his credibility analysis by noting that "the record indicates that [Plaintiff] has a history of work activity, a factor that enhances her credibility." Tr. 456. The ALJ ultimately, found, however, that Plaintiff's "complaints of pain and stomach problems are not as serious as she alleges[,]"

6

because: (1) "[t]he record does not support her allegations of chronic, ongoing problems" and Plaintiff's "characterization of limitations and restrictions is not consistent with the medical records ([s]ee entire records)"; (2) Plaintiff's pain complaints relating to her gynecological issues, stomach issues, and vomiting, were "brought under control with medication ([s]ee medical evidence)"; (3) Plaintiff "did not testify that her activities of daily living [("ADLs")] were not adversely affected by her medical problems"; and (4) Plaintiff "did not report any adverse side-effects from any of her medications (see the medical record and hearing testimony)." Id.

### 2. Plaintiff's Argument

Plaintiff argues that "[t]he ALJ failed to provide clear and convincing reasons to reject [her] subjective pain and symptoms complaints" and challenges each of the four reasons provided by the ALJ for finding her not credible. ECF No. 18, Joint Stipulation at 4.

With respect to the ALJ's first reason—that the medical evidence does not support Plaintiff's pain and symptom complaints—Plaintiff argues that this was not a clear and convincing reason to reject her statements because the ALJ "d[id] not cite any specific part of the record to support his vague conclusion" and, thus, "[t]he ALJ's subjective pain analysis is woefully inadequate." Id. at 6.

With respect to the ALJ's second reason—that her symptoms were brought under control with medication—Plaintiff argues that "[t]he records do not show improvement" of her symptoms. Id. at 7. Plaintiff cites sixteen hospitalizations— several of which were over one week long, while others were over ten days long— spanning from February 26, 2011, to February 7, 2015. Id. at 7-8 (citing Tr. 119, 716-28, 739-829, 820, 832-43, 888-921, 923, 962, 1001-1109, 1071-91, 1159-66, 1198, 1233-44, 1377, 1410). Plaintiff then cites to the final exhibit in the record, where her doctor noted that she had active nausea and vomiting, and was diagnosed with gastroparesis. Id. at 7-8. Plaintiff adds that even when doctors gave her heavy

7

narcotics in a hospital setting, her pain and symptoms sometimes did not improve. Id. at 17 (citing Tr. 795).

With respect to the ALJ's third reason—that Plaintiff's ADLs were not affected by her medical problems—Plaintiff notes instances in the record where she stated that her ADLs were affected by her condition. Specifically, Plaintiff cites her function report, where she stated that: "she spends most days in bed[,] . . . she is in so much pain that she cannot sleep for days at a time[,] . . . she cannot take a shower because she needs to sit[,]" she can perform only minor chores, but needs people to help her "clean, or wash and sweep[,] . . . she can no longer dance or take long walks[,] . . . her family and friends come over to visit and lay in the bed with her[,]" and she requires a cane and a brace in order to walk for more than thirty minutes. Id. at 5 (citing Tr. 613-14, 616, 618-21).

With respect to the ALJ's fourth reason—that Plaintiff did not report any adverse side-effects from her medications—Plaintiff pointed to a specific instance in the record where she "stated that her powerful narcotic medication causes drowsiness." Id. (citing Tr. 621). Plaintiff also notes that she was diagnosed with gastroparesis, that "opioid pain relievers . . . [can] cause similar symptoms [to gastroparesis]" and "[f]or people who already have gastroparesis, these medications may make their condition worse." Id. at 7 n.3 (citation omitted).

### 3. Defendant's Response

Defendant argues that "the ALJ provided several valid bases for finding Plaintiff's subjective statements not fully credible which are supported by the record." Id. at 15.

With respect to the first reason provided by the ALJ, Defendant summarizes evidence cited by the ALJ throughout the decision, as well as evidence not discussed by the ALJ, and appears to argue that Plaintiff is a malingerer. Id. at 8-15. Specifically, Defendant argues that although "the ALJ did not specifically reference these medical findings," and although "Plaintiff contends that the record

contains no evidence of malingering[,]" one doctor "refused" to provide Plaintiff with pain medication because [Plaintiff's] pain [wa]s out of proportion to the exam[,]" and another doctor "observed that Plaintiff did not report any abdominal pain when distracted." Id. at 15 (citing Tr. 740, 791) (internal quotation marks omitted).

With respect to the ALJ's second and fourth reasons, Defendant argues that Plaintiff "denied any adverse reactions to medications" and, thus, "[g]iven Plaintiff's effective health interventions, the ALJ reasonably found [her] conditions not disabling." Id. at 14 (citing Tr. 1289); see also id. at 8 (quoting Tr. 456, 622) (citation omitted) (Defendant asserting that "Plaintiff's symptoms were 'brought under control with medication' without 'any adverse side effects.'").

Finally, with respect to the third reason provided by the ALJ, Defendant argues that "[b]ecause Plaintiff described [ADLs] not limited to the extent one would expect given her complaints of disabling symptoms and limitations, the ALJ reasonably questioned the veracity of her claims." Id. at 14-15. Defendant specifically noted that Plaintiff acknowledged that she could "drive a car, shop in stores, read, handle personal finances, and socialize with friends and family." Id. at 14 (citing Tr. 617-18, 637-39, 1112). Defendant added that Plaintiff can "perform some household chores, prepare simple meals, and go on walks[,]" and Plaintiff "work[ed] independently as a hair stylist in July 2014." Id. (citing Tr. 616-18, 1234).

### 4. Standard To Review ALJ's Analysis Of Plaintiff's Testimony

When a claimant has medically documented impairments that "might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying '<u>which</u> testimony [the ALJ] found not credible" and explaining '<u>which</u> evidence contradicted that testimony.'" Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017) (emphasis in original) (quoting

Brown-Hunter v. Colvin, 806 F.3d 487, 489, 494 (9th Cir. 2015). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

"The ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). Also, while an ALJ cannot reject the severity of subjective complaints solely on the lack of objective evidence, the ALJ may nonetheless look to the medical record for inconsistencies. See Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599-600 (9th Cir. 1999) (finding that "[t]he ALJ provided clear and convincing reasons for rejecting [Plaintiff's] testimony" by "point[ing] to specific evidence in the record—including reports by [Plaintiff's] doctors—in identifying what testimony was not credible and what evidence undermined [Plaintiff's] complaints.").

### 5. ALJ's Decision Is Not Supported By Substantial Evidence

Here, the Court finds that the ALJ's reasons for rejecting Plaintiff's symptom statements are not supported by substantial evidence in the record. With respect to the ALJ's first two reasons—that the medical evidence does not support Plaintiff's pain and symptom complaints and that Plaintiff's symptoms were brought under control with medication—the ALJ failed to explain which testimony he found not credible and which evidence contradicted that testimony. Instead, the ALJ merely found that "[t]he record does not support [Plaintiff's] allegations of chronic, ongoing problems[,]" Plaintiff's "characterization of limitations and restrictions is not consistent with the medical records[,]" and Plaintiff's symptoms were "brought under control with medication." Tr. 456. The ALJ provided no further clarification about these findings, except to state: "([s]ee entire records)" and "([s]ee medical evidence)." Tr. 456. These vague references to the entire

10

record and the medical evidence, generally, without identifying the specific testimony the ALJ found not credible, and explaining the specific evidence that contradicted that testimony, fails to satisfy the most demanding clear and convincing standard in Social Security cases. Garrison, 759 F.3d at 1015; Laborin, 867 F.3d at 1155.

Accordingly, the Court finds that the ALJ's first two reasons for rejecting Plaintiff's statements were neither clear and convincing, nor supported by substantial evidence in the record. Moreover, Defendant's post hoc suggestion of malingering and discussion of evidence not considered by the ALJ, does not change the Court's conclusion. See Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006) (the Court cannot affirm the ALJ's decision on grounds not invoked by the Commissioner).

The Court next turns to the ALJ's third reason—that Plaintiff's symptom statements were not credible because Plaintiff did not testify at the administrative hearing that her ADLs were adversely affected by her medical issues—and finds that the Agency needs to reexamine this issue as well. At the administrative hearing, in response to the ALJ's question regarding the problems Plaintiff was experiencing as a result of her medical conditions, Plaintiff testified that she is hospitalized "a lot of the time, every month or every other month" and that she "spend[s] most of [her] days in pain." Tr. 481. The ALJ then stated "[a]ll right. And let's turn to our doctors immediately." Id.

Thus, on the record before the Court, it appears that Plaintiff began discussing her symptoms, but was unable to complete doing so because the ALJ pivoted "immediately" to eliciting testimony from the medical experts instead. Id. Plaintiff, however, did discuss her decreased range of ADLs in her function report, as Defendant acknowledges in the Joint Stipulation, and as the Court will discuss next. Therefore, the Court finds that Plaintiff's lack of testimony regarding her ADLs at the hearing—where Plaintiff appears to have not had an opportunity to

11

complete her testimony, and where the record supplements this evidence elsewhere—does not constitute a clear and convincing reason for rejecting Plaintiff's symptom testimony.

Moreover, Defendant's argument regarding Plaintiff's ADLs does not change the Court's conclusion because Defendant omits pertinent details relating to Plaintiff's capabilities that demonstrate that Plaintiff's ADLs do not contradict her symptom testimony. For example, while Plaintiff did check a box indicating that she can drive in her function report, Plaintiff also stated in her function report that she is "in constant pain. [She is] nausea[s] everyday [sic]. Sometimes [she] vomit[s] profusely. The vomiting won't stop so [she] ha[s] to go to the hospital. The pain can be so bad that [she] can't get out of bed and [she] can't drive." Tr. 614, 67. Also, when asked in the function report what Plaintiff was "able to do before [her] illness, injuries, or conditions that [she] can't do now[,]" Plaintiff wrote "[d]rive without any problems, work, stand for longer than 30 min[utes]." Tr. 615.

This evidence demonstrates that Plaintiff can drive, but that she can no longer do so "without problems," and that she can only do so when her pain does not prohibit her from getting out of bed, make her feel nauseous, or make her vomit profusely. Tr. 614-15. When these details from Plaintiff's function report that Defendant omitted from its argument are considered, it becomes clear that Plaintiff's ability to drive under such limited circumstances fails to establish that Plaintiff's level of activity is inconsistent with Plaintiff's claimed limitations. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility" and "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

Similarly, Defendant argues that Plaintiff's acknowledged ability to socialize with friends and family is a clear and convincing reason to find that Plaintiff's

12

testimony is not persuasive, because her ADLs exceed her stated capabilities. While Plaintiff did check a box on the function report indicating that she spends time with others, she then explained that her "family and friends will come and lay in the bed with her" one or two times per week. Tr. 618.

Plaintiff's ability to lie in bed with family and friends once or twice per week does not detract from Plaintiff's credibility because the ability to perform this activity is not transferable to a work setting and, specifically, does not demonstrate Plaintiff's ability to meet the physical and mental demands of her PRW as a sales clerk and manager, as the ALJ found Plaintiff had the RFC to perform at step four. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (It is only when a "claimant is able to spend a substantial part of h[er] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, [that] a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain."); Orn, 495 F.3d at 639 (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)) (The Ninth Circuit "'has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.'"). Accordingly, based on the record before the Court, Plaintiff's activities appear to be consistent with her stated limitations.

Finally, with respect to the ALJ's fourth reason—that Plaintiff did not report any adverse side-effects from her medications—the record does not support this conclusion. Plaintiff stated in her function report that the medications she was prescribed at that time caused drowsiness, dry mouth, and heart palpitations. Tr. 621. Moreover, the ALJ acknowledged, and the medical evidence suggests, that Plaintiff's prescribed medications could cause gastroparesis. See Tr. 1235 (Dr. Ayuna K Panossian, M.D., noting on July 7, 2014, that "[o]piates can also be a cause of gastroparesis as well."); Tr. 455 (ALJ noting that the medical expert, Dr. Alpern, who testified at the hearing, opined that [Plaintiff's] . . . gastroparesis could

be the result of her narcotics use (Percocet & Dilaudid)[,]" and the Plaintiff's "chronic problem" of gastroparesis "could be the result of her prescribed use of Percocet which the claimant admitted she is still using."). Accordingly, because Plaintiff stated that her prescribed medications caused drowsiness, dry mouth, and heart palpitations, and because the ALJ acknowledged, and two doctors opined, that Plaintiff's medication could cause her gastroparesis, which the ALJ found was a severe impairment at step two, the Court finds that the ALJ's fourth and final reason is neither clear and convincing, nor supported by substantial evidence.

## IV. CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). See Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." (citation and internal quotation marks omitted)). On remand, the ALJ shall review and consider Plaintiff's credibility and testimony, as well as all relevant medical evidence regarding Plaintiff's limitations.

IT IS SO ORDERED.

DATED: 7/13/2018

HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge